IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COREY A. V.,[1] | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-368-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability benefits in January 2017, alleging disability as of September 19, 2012. (Doc. 18, p. 1). At the evidentiary hearing in March 2019, Plaintiff, through counsel, withdrew his request for a hearing regarding the application for a period of disability and disability insurance benefits after amending the alleged onset date to January 4, 2017. (Tr. 75). After holding the evidentiary hearing, an ALJ denied the application on May 15, 2019. (Tr. 75-86). The Appeals Council denied review, and the decision of the ALJ became the final agency decision.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 15.

(Tr. 1). Administrative remedies have been exhausted, and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to appreciate the severity of Plaintiff's kidney disease.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

The plaintiff bears the burden of proof at steps 1–4.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above.  He determined that Plaintiff had not worked at the level of substantial gainful activity since January 4, 2017, the amended onset date.

The ALJ found that Plaintiff has severe impairments of "coronary artery disease, diabetes mellitus type II, and major depressive disorder." He found that Plaintiff's chronic kidney disease was not a severe impairment because it was asymptomatic. (Tr. 78).

The ALJ found that Plaintiff has the residual functional capacity to:

> Perform light work…except the claimant should avoid concentrated exposure to extreme heat, humidity, pulmonary irritants, such as dusts, fumes, gases, and poorly ventilated areas, and hazards, such as heights and dangerous moving machinery. He is limited to superficial interaction with others, meaning he is precluded from tandem tasks or tasks involving arbitration, negotiation, conflict resolution, management of the work of others, or responsibility for the safety or welfare of others. He can respond to infrequent changes in an otherwise static work environment.

(Tr. 79).

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff is unable to perform past relevant work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1965 and was 53 years old on the date of the ALJ's decision. (Tr. 297). Plaintiff said he stopped working in June 2015 because of his conditions. (Tr. 312). He worked as a high toll analyst from 2000 to 2001, a customer service representative from 2002 to 2003, a claims representative from 2003 to 2006, a school bus driver from 2007 to 2008, a cleaner for a cleaning company in February 2014, a retail store associate in June 2014, and a security guard

for one week in 2015.  (Tr. 314).

In a Function Report submitted in February 2017, Plaintiff said he cares for himself and his grandmother.  Plaintiff said kidney disease is one thing that affects his sleep.  Plaintiff said he cleans, does laundry, mows the lawn, and prepares complete meals.  Plaintiff said he goes outside every day, shops for groceries, and can handle money.  Plaintiff said he spends time with others and goes to the library.  Plaintiff said he used to play in a pool league, but he quit when it became too tiring.  Plaintiff said his conditions affect his lifting, standing, and concentration.  He said he was told to lift ten pounds or less because of polycystic kidney disease, and he concentrates less when fatigued.[4]  Plaintiff said he can walk for thirty to sixty minutes before needing to rest.  Plaintiff said he often experiences muscle tightness and soreness in his legs.  (Tr. 343-49).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in March 2019.  (Tr. 97).  Plaintiff's attorney noted there was not enough evidence to support a finding for the Title II claim, so they were looking at only a Title XVI claim.  Plaintiff's attorney stated Plaintiff was in stage 3b kidney failure.  (Tr. 100).  Plaintiff said he gets tired easily and does not concentrate well.  (Tr. 106).  Plaintiff testified to having fatigue and having a lack of activity.  (Tr. 110).  Plaintiff said he has muscle soreness and cramping that affect how long he can stand.  (Tr. 113).  Plaintiff said his kidney issues include swelling in his calves and lower extremities.  To alleviate that swelling, Plaintiff sits throughout the day.  (Tr. 115-16).

A vocational expert (VE) testified at the hearing.  The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings, and the VE testified that a person with

---

[4] Plaintiff's brief did not identify any such evidence.

Plaintiff's RFC could not do his past work but could do light, unskilled jobs such as marking clerk positions, photocopy machine operator positions, and mail clerk positions.  (Tr. 122-23).

### 3. Relevant Medical Records

Plaintiff presented to SIHF Healthcare Convenient Care Center five times between January 2017 and December 2017.  (Tr. 460, 464, 472, 1310, 1314).  Physical examinations revealed no edema.  (Tr. 1313, 1317).  The assessments included chronic kidney disease stage 3 and renal disorder, and plans included medications, a nephrology referral, lab work, follow-ups, and imaging.  (Tr. 460-61, 464, 472, 1313-14, 1318).

Plaintiff presented to St. Elizabeth's Hospital on March 1, 2017.  (Tr. 746).  A physical examination revealed Plaintiff had normal musculoskeletal range of motion, no pitting edema, and no calf tenderness.  (Tr. 749, 1026, 1054).  The assessment included stage 3 chronic kidney disease and polycystic kidney disease, and plans included taking medications.  (Tr. 749-50).  Plaintiff was discharged on March 2, 2017, and no lower extremity edema was noted.  (Tr. 1024).

Plaintiff presented to Nancy Wiebke, a nurse practitioner, on May 17, 2017.  (Tr. 1392).  A physical examination revealed Plaintiff had no edema.  (Tr. 1395).

Plaintiff underwent seven nephrology appointments at St. Louis University Hospital between May 2017 and October 2018 reporting chronic kidney disease stage 3, lower extremity edema, and elevated Creatinine[5].  (Tr. 1843-45, 1848, 1851, 1860, 1865).  In October 2018, Plaintiff's chronic kidney disease was referred to as stage 4.  (Tr. 1870, 1874).  Physical examinations from May 2017 to January 2018 revealed Plaintiff had no edema.  (Tr. 1844, 1847, 1850, 1853).  Physical examinations later revealed Plaintiff had +1-2 lower extremity edema.

---

[5] Creatinine is "used to diagnose and monitor renal failure." https://medical-dictionary.thefreedictionary.com/creatinine, visited on November 10, 2020.

(Tr. 1862, 1868, 1873).  The assessments included chronic kidney disease and stable renal function between May and August 2017.  (Tr. 1844, 1847).  The assessments indicated chronic kidney disease and a slight decrease in renal function in December 2017.  (Tr. 1850).  Later, the assessments indicated chronic kidney disease stage 3, polycystic kidney disease, and increased Creatinine to 2.7.  (Tr. 1853, 1862, 1868).  The assessment in October 2018 included chronic kidney disease stage 4, autosomal dominant polycystic kidney disease, and increased Creatinine to 2.7.  (Tr. 1873, 1877).  Plans included medications, follow-ups, a low salt diet, and lab work.  (Tr. 1844, 1847, 1850, 1853-54, 1862-63, 1868, 1873, 1877).

Plaintiff presented to Meena Murugappan, a pulmonologist at Multispecialty Care St. Elizabeth's, on December 8, 2017.  (Tr. 1512).  A physical examination revealed Plaintiff had no lower extremity edema.  (Tr. 1514).

Plaintiff presented to Regina Chiu, a cardiologist at Prairie Cardiovascular Consultants LTD, on February 27, 2018.  A physical examination revealed Plaintiff had no edema or tenderness.  (Tr. 1471).

Plaintiff presented to Rachelle Leach, an emergency medicine physician, on March 27, 2018.  (Tr. 1716).  A physical examination revealed Plaintiff had no edema, tenderness, or deformity.  (Tr. 1718).

Plaintiff presented to Dr. Murugappan on April 2, 2018.  (Tr. 1519).  A physical examination revealed Plaintiff had no lower extremity edema.  (Tr. 1521).

Plaintiff presented to Anne Cath, an internist at Memorial Medical Group, on June 12, 2018, reporting swelling in his ankles, feet, and calf muscles.  A physical examination revealed a grossly normal musculoskeletal state.  The assessment included polycystic kidney disease and

chronic kidney disease stage 3, and plans included seeing a nephrologist. (Tr. 1484-86).

Plaintiff presented to Prasad Kandula, a cardiologist at Memorial Medical Group, on July 5, 2018, reporting swelling in his feet and legs. A physical examination revealed Plaintiff had 1+ pitting lower extremity edema but no clubbing. The assessment included polycystic kidney disease, chronic kidney disease stage 3, and bilateral lower extremity edema, and plans included seeing a nephrologist for management of lower extremity edema. (Tr. 1567-69).

Plaintiff presented to Dr. Kandula on October 19, 2018, reporting resolved lower extremity edema. A physical examination revealed Plaintiff had no clubbing. The assessment included polycystic kidney disease, chronic kidney disease stage 3, and bilateral lower extremity edema, and plans included medications. (Tr. 1800-02).

Plaintiff presented to Omar Mahasneh, an internist, on December 30, 2018. A physical examination revealed Plaintiff had no clubbing or edema. (Tr. 1770-71).

**4. Medical Opinions**

Frank Mikell, a state agency medical consultant, identified Plaintiffs chronic kidney disease as "Severe" and at stage 3b. (Tr. 133, 137). Julio Pardo, another state agency medical consultant, also identified Plaintiff's chronic kidney disease as "Severe" and at stage 3b. (Tr. 163, 167). Both Dr. Mikell and Dr. Pardo agreed that Plaintiff could perform light work. (Tr. 139, 150-51, 169-70, 182-83).

## Analysis

Plaintiff argues the ALJ erred in not identifying kidney disease as a severe impairment at step 2. (Tr. 78).

The failure to designate kidney disease as a severe impairment, by itself, is not an error

requiring remand. At step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments. This is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, he must continue with the analysis. And, at step 4, he must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. See *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010)).

The ALJ found Plaintiff had the severe impairments of coronary artery disease, diabetes mellitus type II, and major depressive disorder. As stated above, and as suggested by Defendant, the ALJ's failure to designate kidney disease as a severe impairment is harmless error, and the ALJ indicated other severe impairments. Therefore, the Court does not find Plaintiff's argument persuasive here.

To support his argument that the ALJ failed to appreciate the severity of his kidney disease, Plaintiff points the opinions of both Dr. Mikell and Dr. Pardo, implying those opinions should have been more influential in the ALJ's decision regarding Plaintiff's kidney disease.

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that

undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted).

Plaintiff is correct that both Dr. Mikell and Dr. Pardo identified Plaintiff's chronic kidney disease as severe.  However, Dr. Mikell and Dr. Pardo also both identified Plaintiff as one who could perform light work, such as in the RFC.  Whether Plaintiff's kidney disease is considered severe or not makes no difference to the end result.  Because of this, and because the ALJ is only required to minimally articulate his reasonings, Plaintiff's argument does not stand.

Closely connected to this issue is Plaintiff's argument that the ALJ played doctor by identifying Plaintiff's kidney disease as "asymptomatic."  (Tr. 78, 80).  Plaintiff is engaging in a level of nit-picking that is of no moment.  The medical records do not support Plaintiff's claim that he was extensively limited by chronic kidney disease.  Additionally, Plaintiff's list of symptoms that can occur due to kidney disease is an invitation for the ALJ to play doctor in the absence of medical evidence that Plaintiff actually has these symptoms due to kidney disease. The determination of RFC is an administrative finding that is reserved to the Commissioner per 20 C.F.R. §404.1527(d)(2), and the ALJ must make his decision based on the record as a whole without relying on his own lay interpretation of the medical evidence.  That is the ALJ's proper role.  20 C.F.R. §404.1527(d)(2).  It cannot be said the ALJ played doctor here.

Plaintiff mentions the existence of medical records at Tr. 9-68 that he submitted to the Appeals Council to show his chronic kidney disease advanced to stage 5.  The medical records at

Tr. 9-68 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence.  Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error."  *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994).  See also, *Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

Plaintiff asserts the ALJ erred by citing to activities of daily living that were not representative of his current abilities in relation to his worsening kidney disease.  "An ALJ may not equate activities of daily living with those of a full-time job…But an ALJ is not forbidden from considering statements about a claimant's daily life."  *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020).  An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged.  *Id*. at 593.

Plaintiff is reaching with this argument.  As the Seventh Circuit indicated in *Jeske*, an ALJ is not forbidden from considering activities of daily living.  The ALJ just cannot use that information and equate it to full-time work.  Here, the ALJ did not equate Plaintiff's activities of daily living to full-time work.  The ALJ simply referred to Plaintiff's activities of daily living to formulate his understanding of Plaintiff's condition, while considering other things from the transcript as well.

Although it may be true that Plaintiff's ability to engage in more strenuous activities of daily living may have decreased over time with the worsening of Plaintiff's kidney disease, the activities of daily living that Plaintiff points to fail to prove his argument. Plaintiff points to allegedly "less robust" activities of daily living such as driving his grandmother's car, watching television, and reading, suggesting these activities are not inconsistent with a restriction to

sedentary work. (Doc. 18, p. 7). While Plaintiff may be correct that those statements are potentially consistent with a restriction to sedentary work, the mere mention of those alone are not enough to allow for such a restriction. Therefore, the ALJ did not err as Plaintiff suggests.

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: November 12, 2020.**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**